

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor
State Capitol
Austin, Texas

Dear Sir:

Opinion No. O-1627
Re: Authority and power of Board
of Regents of State Teachers'
College to bind a college under
a land purchase contract, which
calls for annual payments over
a period of more than three
years.

We have your letter of October 31, 1939, which
we quote in full in order that this opinion will reflect
all the facts:

"In connection with the current annual
audit of the accounts of one of the State
Teachers' Colleges of Texas, the following
facts relating to a real estate transaction
appeared:

"The College entered into an 'escrow
agreement' on September 29, 1938, with the
owner of a city lot. The instrument recited
that a deed of even date conveyed the lot
from the owner to the State, for the use and
benefit of the College, for a recited consid-
eration of $3,500 cash; that as a matter of
fact no part of the consideration had been
paid, and that the deed 'is being deposited
in escrow' with a local bank to be disposed of
according to the terms which followed.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"It continued, 'Said consideration of
$3,500 is to be paid by said College to the
said Mrs. Lou Oglesby Harris, or order, in
four installments, the first being for $1,000.00,
to mature on or before October 1, 1938, and the
last three installments being for $833.33 each,
to mature, respectively, on or before September
1st of the years 1939, 1940 and 1941 . . .'"

"It further provided:

"'If the College makes prompt payment of
said purchase money in the manner above speci-
fied and otherwise complies with the terms and
provisions hereof, then immediately upon pay-
ment of all of said purchase money and the
accrued interest owing thereon, the deed above
referred to is to be delivered by said State
Bank & Trust Company to said College on its de-
mand; but if default is made in the payment of
any installment of the purchase money or any
interest thereon, when due, or in case the Col-
lege fails or refuses to comply with any of
the other terms or provisions hereof, then at
any time thereafter the said Mrs. Harris may,
at her option, terminate this contract, in which
event the sale of said land will become null and
void and said deed will be surrendered to her by
said State Bank & Trust Company on her demand
and she shall be entitled to retain as liqui-
dated damages, and not as a penalty, for breach
hereof all sums of money previously paid to her
on the purchase money by said college.'

"The instrument was signed by the parties,
but not acknowledged or recorded, and the bank
noted thereon its receipt of the deed and accep-
tance of the terms of the agreement.

"The accompanying deed, held by the bank,
is in regular form and includes this recitation,
'As part of the consideration for this conveyance,
grantee assumes payment of 1/3 of the 1938 taxes
on said property and grantor is to pay 2/3
thereof.' It is acknowledged by Mrs. Harris,
'a widow(, and is, of course, unrecorded.

"The $1,000 payment due October 1, 1938, was duly made.

"Your opinion on the following questions is respectfully requested:

"(1) Is the Board of Regents of the State Teachers' Colleges empowered to bind a College under a land-purchase contract, the terms of which call for payments over a period of more then three years?

"(2) As of August 31, 1939, what was the nature of the interest of the College in this property?

"(3) As of August 31, 1939, what was the liability of the College, if any, with respect to future payments toward the purchase of the property?

"For the purposes of this inquiry you may assume such facts, not detailed, as are necessary. I have related herein the substance of all the information I have. It will be helpful, however, if you will state the assumptions you make."

It is generally held that the governing body of a college or university may make such contracts as are within the limits of the authority conferred on it by charter or statute and ordinarily has implied powers to do everything necessary and convenient to accomplish the object of the institution and not prohibited by law, 14 C. J. S. 1362-3.

Section 1 of Article 2647, R. C. S., 1925, provides:

"The Board of Regents of the State Teachers' College is charged with the responsibility of the general control and management of all State Teachers' Colleges for white persons and may erect,

105

equip and repair buildings; . . ."

Section 9 of the same article provides:

"Power and authority is hereby conferred upon said Board of Regents to acquire by purchase or condemnation for the use and benefit of any of the State Teachers' Colleges, such lands within the counties where such schools may be located as said board may deem expedient for the use of any of said schools for purposes necessary to the conduct thereof."

Prior to 1933, the governing boards of the several State Colleges apparently were permitted to disburse their local income as they saw fit, within the limits of their authority. The 43rd Legislature, however, took over control of all the student fees and all other local institutional monies collected by the institutions of higher learning, including State Teachers' Colleges, and made the expenditure of these monies subject to prior appropriation by the Legislature in the same manner as money from the general fund. See Acts 1933, 43rd Leg. p. 596, Ch. 196 and Ch. 221 (now Articles 2654c and 2654d, Vernon's Civil Statutes, Centennial Edition). The effect of this legislation is to make all monies expended by colleges, except gifts or bequests, subject to appropriation.

The General Appropriation Bill, Chapter 444, Acts of 1937, 45th Legislature, Regular Session, appropriates the local institutional receipts such as student fees and all other receipts of the respective state colleges and universities as a "maintenance or contingent fund" and provides for the use of this fund by the schools "for the support, maintenance, operation and improvements of said institutions."

We shall assume for the purposes of this opinion that this language of the appropriation bill is sufficiently broad to authorize the Board of Regents to purchase the land in question and that the land is reasonably necessary to the conduct of the college, as required by Sec. 9 of Art. 2647, supra. Since our opinion that the Board of Regents could not bind the college by the land purchase contract is based on other grounds, a discussion of these

problems is not necessary.

As pointed out by our Supreme Court in the case of Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722 (1924) the State Constitution is silent as to the length of terms for which a contract may be made by the State and the only provisions of the Constitution that might affect the term are those which provide that no debt may be created by or on behalf of the State, and that no appropriation of money may be made for a longer term than two years. The provision against monopolies, also suggested, obviously is inapplicable.

Section 6 of Article VIII of the State Constitution provides:

"No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years . . ."

Section 49 of Article III provides:

"No debt shall be created by or on behalf of the State except . . ." (Exceptions not important to us here).

In passing we might point out that our courts have defined the words "debt" and "liability" as used in the Constitution and statutes in a general and not in a restricted sense. Reconstruction Finance Corp. v. Gossett, 130 Tex. 535, 111 S. W. (2d) 1066, 1073 (1938).

It may be well to point out here also that it is not essential to the creation of a debt that the borrower should be liable to be sued therefor and that a debt is money due upon a contract, without reference to the question of the remedy for its collection. Brown v. City of Corry, 17 Pa. Co. Ct. R. 490, 496; 2 W. & P. (1st) 1880; City of Baltimore v. Gill, 31 Md. 375, 390.

The case of Charles Scribner's Sons v. Marrs, supra, involved a fact situation somewhat similar to that

Honorable Tom C. King, Page 6

stated in your letter. There the State Board of Education
entered into a contract for the purchase of books over a
five year period. In its discussions of the questions of
whether the contract violated either Sec. 49 of Article III
or Sec. 6 of Article VIII of the Constitution, both of which
are quoted above, the court stated that since the board had
not bound itself to pay any amount whatsoever except upon
a contingency wholly within its own discretion, the contract
was not violative of either provision of the Constitution.

We quote the language of the Court:

"The obligation of the contract is not to
buy a fixed number of amount of books, but only
so many as are needed by the schools of the state.
Liability is fixed only for such amounts as are
requisitioned by the trustees of the schools. The
number of books purchased for any one year and the
amount of money applied thereto is wholly within
the control of the school authorities.

"The contract is for uniform textbooks for a
period of five years. No quantity is stipulated
and no promise to pay, only an agreement to use
the books in the schools. The statute (allowing
Board to enter into a six year contract) and the
contract provide that no debt is created. The
obligation to pay arises only upon the purchase
and delivery of books for the year when needed,
and according to the purchase. The books so fur-
nished and so purchased during any year do not
make a charge on the future resources of the State,
but are paid for each year as the purchases are made.

"It logically follows that the contract is not
repugnant to that part of Sec. 6, Art. 8, of the
Constitution which provides: 'Nor shall any appro-
priation of money be made for a longer term than
two years.'"

The implication is inescapable from a reading of
the above quoted language that if the contract in that case
had been one for the purchase of a certain definite quantity
of books at a single agreed consideration and the Board had
attempted to bind the state to pay that consideration in
installments over a period of five years, the court would
have held the contract void.

And the Supreme Court in a subsequent decision

struck down a contract whereby the Adjutant General attempted to bind the State on a five year lease of a building for a National Guard Armory. The Court gave as one of its reasons the fact that the contract would obligate the State beyond the two-year appropriation period. Ft. Worth Cavalry Club v. Shepherd, 125 Tex. 339, 83 S. W. (2d) 660 (1935).

We quote the language of the court:

"In the case at bar, the Adjutant General was limited in his right to contract to the amount of his appropriation bill. He was also limited by the term of such appropriation. When he attempted to go beyond the powers conferred on him by law, he acted without authority of law, and such act was and is void, and does not bind the state." (Underscoring ours).

And in a previous portion of the opinion, the Court declared:

"When we come to construe such statutes, together with the above quoted appropriation act, it is reasonably clear to us that the Adjutant General had the implied power within the reasonable limitation of such appropriation, to make contracts for the period and purposes covered thereby and no further. This holding renders this contract illegal." (Underscoring ours.)

In the light of the foregoing authorities, it is the opinion of this department that your first question should be answered in the negative and you are so advised.

Turning now to your second question, it is apparent that the greatest possible interest that the college could have in the property as of August 31, 1939, is an equitable title.

Delivery of the deed in escrow did not have the effect of vesting legal title in the college. An "escrow" is a written instrument which by its terms imports a legal obligation deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third person to be kept by the depositary until the performance of a condition or

Honorable Tom C. King, Page 8

the happening of a certain event, and then to be delivered or to take effect. McDaniel v. McDaniel, 269 N.W. 380, 382, 131 Neb. 639, 2 W. & P. (5th) 755.

Delivery of a deed in "escrow" is a delivery to a third person to take effect upon the happening of some condition. Viso v. Gullo, 153 So. 3, 178 La. 8, 2 W. & P. (5th) 755.

"Although legal title does not pass to the vendee under a contract of sale until actual delivery of the deed to the property, still the vendee under such contract of purchase, especially where he goes into possession of the property, is invested with the equitable title from the date of the contract, or in any event from the date he takes possession. Rives v. James (Civ. App. San Antonio, 1928) 3 S. W. (2d) 932. Error dismissed.

The passage of equitable title is based on the fact that equity will specifically enforce a contract for the sale of land upon the maxim that equity considers that as done, which should be done. The fact that courts will not enforce an illegal contract which is still executory creates a doubt as to whether equitable title passed in this instance. See 38 Tex. Jur. 655, sec. 10 and cases cited.

However, the college undoubtedly has an equitable interest in the property by virtue of payment of a portion of the purchase price.

The case of City of Fort Worth v. Reynolds (Civ. App. Ft. Worth, 1916) 190 S. W. 501, involved an illegal contract of sale whereby a municipality attempted to obligate itself beyond its authority in the purchase of land for its waterworks. The vendor brought suit for specific performance and this remedy was denied by the court in the following language:

". . . there is a well recognized line of authorities which we approve, holding that in a case where property, real or personal, has been acquired by means of a contract forbidden by some constitutional or legislative enactment,

or otherwise unauthorized, the vendor, while
he will be denied an enforcement of the ille-
gal contract, may recover the specific pro-
perty . . . by return of all, if anything, he
may have received by virtue of the contract
of sale."

It may be inferred from this decision that the
vendee (the college in this instance) has a claim against
the property in the nature of an equitable interest therein,
which has arisen by virtue of payment of a portion of the
purchase price. This answers your second question.

Your third question requests our opinion as
to the liability of the college for future payments under
the contract. As we have held that the contract was un-
authorized, it follows that no liability was created
against the college for future payments under the con-
tract.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *[signature]*

Robert E. Kepke
Assistant

By *[signature]*

Peter Maniscalco

PM:BT

APPROVED FEB 14, 1940

*[signature]*

ATTORNEY GENERAL OF TEXAS

